## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RESIDEO TECHNOLOGIES, INC. and<br>RESIDEO LLC f/k/a ADEMCO INC.,<br><br>Defendants. | Civil Action No. 2:25-cv- 00239<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Resideo Technologies, Inc. and Resideo LLC f/k/a Ademco Inc. (collectively, "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Available At |
|---|---|
| 1)  7,974,266 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7974266 |
| 2)  7,246,173 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7246173 |
| 3)  7,474,667 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7474667 |
| 4)  7,567,580 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7567580 |
| 5)  7,593,428 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7593428 |

| U.S. Patent No. | Available At |
|---|---|
| 6)  7,209,876 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7209876 |
| 7)  7,408,872 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7408872 |
| 8)  7,394,798 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7394798 |

2.     IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.     IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas.

4.     Defendant Resideo Technologies, Inc. ("Resideo") is a corporation formed and organized under the laws of Delaware with its principal executive offices and corporate headquarters located at 16100 N. 71st Street, Suite 550, Scottsdale, Arizona. Resideo is registered to do business in Texas. *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 804269474 (showing Resideo's application for registration to do business as a foreign corporation in Texas) (last visited Feb. 20, 2025). Resideo's registered agent in Texas is Corporation Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3128.

5.     Defendant Resideo LLC f/k/a Ademco Inc. ("Resideo LLC" or "Ademco") is a corporation formed and organized under the laws of Delaware with its principal place of business at 115 Tabor Rd. Morris Plaints, NJ 07950. Ademco is registered to do business in Texas and maintains Corporation Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3128 as its registered agent. *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 803012625 (showing Ademco's 2023 Public Information Report in Texas) (last visited Feb. 20, 2025). On February 13, 2025, Ademco Inc. was converted to Resideo LLC. *See*

*id.* at Document Number 1452466050007 (showing Ademco's Amendment to Registration to Disclose a Change Resulting from A Conversion or Merger). Resideo LLC is a wholly-owned subsidiary of Resideo.

6.      Resideo describes itself as "a leading global manufacturer and developer of technology-driven products and solutions that provide critical comfort, residential thermal and security solutions to over 150 million homes globally" and also "the leading wholesale distributor of low-voltage security products including intrusion, access control and video products and participate significantly in the broader related markets of smart home, fire, power, audio, ProAV, networking, communications, wire and cable, enterprise connectivity, and structured wiring products." Resideo 2023 Annual Report, at "Form 10-K", available for download at https://investor.resideo.com/financials/annual-reports/default.aspx (last visited Feb. 20, 2025). Defendant Resideo operates via two business segments: "Products & Solutions" and "ADI Global Distribution." *Id.* at 3 (citations are to the document's internal pagination).

7.      Resideo's Products & Solutions segment offers "temperature and humidity control, thermal water and air solutions, as well as security panels, sensors, peripherals, wire and cable, communications devices, video cameras, awareness solutions, cloud infrastructure, installation and maintenance tools, and related software." Resideo 2023 Annual Report at 49. These products offer "home connectivity" that provide "control, visibility, insights, and alerts to the end user." *Id.* at 3. The Products & Solutions segment "operate[s] manufacturing and distribution facilities throughout the world, including sites in Mexico, the Czech Republic, Hungary, the United States, Germany, United Kingdom, Netherlands and China." *Id.* at 4. This segment's revenue is derived in significant part "from products manufactured in [Resideo's] own facilities." *Id.* And "manufacturing operations include printed circuit board (PCB) assembly, surface mount

technologies (SMT), automatic and manual assembly and test, electrotechnical assembly and test, die casting and machining, calibration and final test." *Id.* Resideo also sources "raw materials and commodities, electronic components and assemblies, and mechanical components and assemblies from a wide range of third-party suppliers worldwide." *Id.* The Products & Solutions segment primarily sells Resideo's products "through networks of professional contractors, distributors, and OEMs, as well as major retailers and online merchants." *Id.* at 8.

8.    Resideo's ADI Global Distribution segment utilizes "nearly 200 stocking locations in 13 countries" to "distributes[] more than 450 thousand products from over one thousand manufacturers to a customer base of approximately 100 thousand professionals and is recognized for superior customer service." Resideo 2023 Annual Report at 3. Products from this segment are "delivered through networks of professional contractors, distributors, and OEMs, as well as major retailers and online merchants." *Id.* at 8.

9.    On information and belief, Defendant Ademco, now Resideo LLC, registered to use "Resideo" as an assumed name at least with the Secretary of State of Texas, and also does business in the U.S. as "ADI Global Distribution," also referred to as "ADI." *See, e.g.,* Standard Terms and Conditions, ADI, A RESIDEO COMPANY[1] ("All sales by Ademco Inc., doing business as ADI Global Distribution ("Seller"), are expressly conditioned by and under these terms and conditions….").

10.    Among Resideo's products, Resideo designs, manufactures, distributes, and sells products that specialize in smart home technology, including "air and temperature control solutions, security products, water monitoring product and energy solutions." *See* Resideo, ADI, A  RESIDEO  COMPANY,  https://www.adiglobaldistribution.us/Catalog/shop-brands/resideo

---

[1] https://www.adiglobaldistribution.us/TermsAndConditionsPage  (last visited Feb. 20, 2025)

(summarizing the Resideo brand product offerings) (last visited Feb. 20, 2025). These products communicate with each other using network protocols, including 802.11-based protocols (referred to commonly as "Wi-Fi"). For example, Resideo offers "smart thermostats, programmable thermostats, non- programmable thermostats, air purifiers, humidifiers, [and] ventilation controls" as air and temperature solutions." Resideo also offers "door and window contacts, alarm communicators and control panels, security cameras, smoke detectors, heat detectors, CO detectors, [and] wireless keys" as security solutions. And Resideo offers "leak detectors, freeze detectors, water heater solutions, [and] hydronic zoning panels" as water safety solutions. Among power or energy solutions products, Resideo offers "smart thermostats, HVAC components and other home system essentials."

11.    On information and belief, Defendants on their own and/or via subsidiaries, distributors, and affiliates maintain a corporate and commercial presence in the United States, including in Texas and this District. Defendants maintain their business presence in the U.S. and Texas *via* at least the following activities: 1) providing branch locations across the U.S. (including six in Texas) where consumers may pick-up purchased products; 2) maintaining an online presence (https://www.resideo.com/us/en/products/, https://www.adiglobaldistribution.us/Catalog/shop-brands/resideo, and https://www.honeywellhome.com/us/en) that solicits sales of Resideo products under at least the Resideo® and Honeywell Home™ brands; 3) distributing, via wholesale and retail channels, Resideo's products and services, including utilizing national retailers in this District; 4) providing to U.S. consumers the "Resideo App," the "Total Connect Comfort app" and the "ADI mobile app" (among other app software) for accessing product information, connecting to Wi-Fi networks, purchasing products, and other services related to Resideo products; 5) establishing a network of distributors, dealers, and qualified expert installers for the sale and use of Resideo

products across the U.S.; and 6) employment of at least 3,300 persons in the United States, including residents of Texas and this District. For example, Defendants employ Texas residents in at least five (5) business locations in the Dallas / Fort Worth area, including at 12880 Valley Branch Lane Farmers Branch, TX 75234 (branch location); 5036 Saunders Rd., Fort Worth, TX 76119 (branch location), 750 W John Carpenter Freeway, Irving, TX, 75039, 346 Beltline Rd Unit 100, Coppell, TX, 75019, and 2601 Petty Place, Fort Worth, TX, 76177. *See, e.g.*, *Why Join Us*, RESIDEO, https://www.resideo.com/us/en/corporate/about/careers (providing a link to Resideo's job search portal, which identifies where Resideo is hiring). Thus, Defendants Resideo and Resideo LLC do business in the United States, the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

12.     This arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### A.  DEFENDANT RESIDEO

14.     On information and belief, Defendant Resideo is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District

vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

15.     For example, Resideo owns and/or controls multiple subsidiaries, distributors, and affiliates including, but not limited to, Defendant Resideo LLC. Resideo LLC operates in the U.S. and in Texas under the assumed name "Resideo" and is also known as ADI Global Distribution or ADI. Resideo maintains a significant business presence in Texas by employing residents in at least six (6) branch locations where consumers may purchase and pick-up merchandise and other warehousing/distribution facilities, including locations in Austin, Houston, San Antonio, and the Dallas/Fort Worth     Area. *See, e.g., BranchLocator*, ADI, A RESIDEO COMPANY, https://www.adiglobaldistribution.us/dealerlocator (providing a search function for consumers to find branch locations in the U.S. and Texas). Resideo, via at least the operations of its ADI Global Distribution business segment, owns or leases a logistics and distribution facility in this District at 2601 Petty Place, Fort Worth, TX, 76177. *See* Property Search Results for Year 2025, https://www.dentoncad.com/property-search (Search results for "Ademco" as owner) (last visited Feb. 20, 2025). Importantly, Resideo maintains its own employees or agents at this facility to conduct its business of at least distribution of Resideo products.     *See,*

*e.g.,*https://ehtl.fa.us6.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX/job/15172/?utm_medium=jobshare&utm_source=External+Job+Share (showing a "Sr HSE Leader" position open for hiring at the 2601 Petty Place location) (last visited Feb. 20, 2025).

16.     Such a corporate and commercial presence by Defendant Resideo furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing electronic devices in Texas, including in this District. Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Resideo has committed acts of direct

and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Resideo would not offend traditional notions of fair play and substantial justice.

17.    On information and belief, Resideo controls or otherwise directs and authorizes all activities of its subsidiaries, distributors, and affiliates, including, but not limited to Defendant Resideo LLC, which, significantly, has substantial business operations in Texas. Directly and via at least these subsidiaries, distributors, and/or affiliates and via intermediaries, such as resellers, dealers, expert installers, and customers, Resideo has placed and continues to place infringing electronic devices, including Resideo's smart home devices, such as Resideo® and Honeywell HomeTM branded devices, into the U.S. stream of commerce. Resideo has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this District and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

18.    On information and belief, Defendant Resideo also purposefully places infringing smart home devices in established distribution channels in the stream of commerce by contracting with national retailers who sell Resideo's products in the U.S. via online and brick and mortar stores, including in Texas and this District. Resideo contracts with these companies with the knowledge and expectation that Resideo's smart home devices will be imported, distributed,

advertised, offered for sale, and sold in the U.S. market. For example, at least Best Buy, Walmart, Home Depot, Lowes, Target, and Amazon.com offer for sale and sell Resideo smart home devices, in and specifically for the U.S. market, via their own websites or retail stores located in and selling their products to consumers in Texas and this District. *See, e.g.*, Find A Resideo Retailer Near You, RESIDEO, https://www.resideo.com/us/en/find-a-retailer/ (showing where the Resideo's products are sold) (last visited Feb. 20, 2025). Moreover, Resideo products, such as at least Honeywell HomeTM branded products are offered for sale and sold in retail stores located in this District. *See, e.g.*, T9 WiFi 7-Day Programmable Smart Thermostat with Touchscreen Display and Smart Room Sensor, HOME DEPOT, https://www.homedepot.com/p/Honeywell-T9-WiFi-7-Day-Programmable-Smart-Thermostat-with-Touchscreen-Display-and-Smart-Room-Sensor-RCHT9610WFSW2003/312604036 (showing Resideo's Honeywell Home product available for sale in Frisco). Resideo also provides its application software products and services, e.g., the "Resideo App," the "Total Connect Comfort App," and the "Total Connect 2.0 App" for download and use in conjunction with and as a part of smart home devices. *See* Applications for Your Connected Products, RESIDEO, https://www.resideo.com/us/en/apps/ (listing available Resideo apps) (last visited Feb. 20, 2025). Resideo's apps are available via digital distribution platforms operated by Apple Inc. and Google. *Id.*

19.     Based on Defendant Resideo's connections and relationship with its distributors, subsidiaries, including its wholly owned subsidiary Resideo LLC, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Resideo knows that Texas is a termination point of the established distribution channel for the sale and use of Resideo smart home products and related software to consumers in Texas. Resideo, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this

Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

20.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant Resideo has committed acts of infringement in this District. As further alleged herein, Defendant Resideo, via its own operations and employees located there and via ratification of Defendant Resideo LLC's (i.e., ADI) presence and activities, including as an agent and alter ego of Resideo, has a regular and established place of business, in this District. Resideo's regular and established place of business is at 2601 Petty Place, Fort Worth, TX, 76177, which according to publicly available records is located in Denton County. Accordingly, Resideo may be sued in this district under 28 U.S.C. § 1400(b).

## B. DEDENDANT RESIDEO LLC F/K/A ADEMCO

21.    On information and belief, Defendant Resideo LLC is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Resideo LLC is registered to do business in Texas, including registration to use the name

"Resideo," which is the same name of its parent Resideo Technologies, Inc. Moreover, Resideo LLC, including as an alter ego of parent company Resideo, owns and operates a logistics/ distribution facility where employees and/or agents of Defendants work to store, distribute, and sell Resideo products, including related administration of the business. This facility is located in Denton County at 2601 Petty Place, Fort Worth, TX, 76177.

22.    Defendant Resideo LLC further is responsible for importing, shipping, distributing, selling, offering for sale, delivering, and using Resideo's smart home devices, including Resideo® and Honeywell Home™ branded products and purposefully placing infringing smart home devices in established distribution channels in the stream of commerce in the U.S., including in Texas and this District. For example, Resideo LLC, in concert with Resideo as part of the ADI Global Distribution segment, distributes its products to residents of Texas and this District, via distributors, professional contractors, original equipment manufacturers, dealers, retailers, and online merchants (including its own online store). *See Resideo*, ADI, A RESIDEO COMPANY, https://www.adiglobaldistribution.us/Catalog/shop-brands/resideo (showing Resideo products offered for sale via ADI's website) (last visited Feb. 20, 2025). Moreover, Resideo LLC provides branch locations where residents of Texas and this District "shop and pick up anytime at an ADI locker" Resideo products sold to consumers via ADI's website. *See* Shop Online, Pick Up Anytime, ADI, A RESIDEO COMPANY, https://www.adiglobaldistribution.us/pick-up-anytime (last visited Feb. 20, 2025). Resideo LLC also provides software applications such as the ADI app "for the easiest, fastest, access to products, account information and more." *See* Access ADI Wherever You Go, ADI, A RESIDEO COMPANY, https://www.adiglobaldistribution.us/adi-app (advertising that the app "makes browsing and shopping low-voltage products easier than ever"). Defendant Resideo LLC, therefore, has purposefully directed its activities at Texas, and should

reasonably anticipate being brought in this Court.

23.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant Resideo LLC has committed acts of infringement in this District and has one or more regular and established places of business in this District, including the location listed above in Denton county. One such regular and established place of business is the Resideo LLC facility located at 2601 Petty Place, Fort Worth, TX, 76177, which Resideo and Resideo LLC jointly utilize, via their employees and/or agents, to store, distribute, and sell Resideo products in this District, Texas, and the U.S. Accordingly, Defendant Resideo LLC may be sued in this district under 28 U.S.C. § 1400(b).

24.    On information and belief, Defendants Resideo and Resideo LLC each have significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this District both proper and convenient for this action.

## THE ACCUSED PRODUCTS

25.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

26.    On information and belief, a significant portion of the operating revenue of Defendants is derived from the manufacture and sale of smart home devices. For example, Defendant Resideo utilizes its distributors, subsidiaries, including its wholly owned subsidiary Defendant Resideo LLC, resellers, contractors, dealers, installers, retailers, and digital distribution platforms to provide smart home devices and related services to consumers. For the year 2023, Defendants reported $2.672 billion in (external) revenue for the Products & Solutions segment and the ADI Global Distribution segment reported $3.57 billion in external revenue. *See* Resideo 2023 Annual Report at 49.

27.    The Asserted Patents cover Defendants' smart home products and components, software, services, and processes related to same that generally connect to other devices in a network or other networks using a wireless protocol, such as Wi-Fi. *See All Smart Home Products*, RESIDEO, https://www.resideo.com/us/en/products/ ("From WiFi connected, smart and programmable thermostats to humidifiers, home ventilation and air purifiers, shop Resideo to take control of what supports your home in making you feel more at home.") (last visited February 20, 2025). Defendants' infringing accused products include, but are not limited to, Resideo Website, First Alert App, Resideo Pro App T10 & T10+ Pro Smart Thermostat with RedLINK® 3.0, THM6000R7001 RedLINK™ Internet Gateway, LTE-CFV Vista® High Security Fire Internet And LTE Communicators, HWF2A-COM Single Or Dual Path Light Commercial Fire Communicator, LTE-CFA AT&T INTERNET AND 4G LIGHT COMMERCIAL FIRE COMMUNICATORS, HWF2V-COM Single Or Dual Path Light Commercial Fire Communicator, the ProSeries Panels, PROWIFIZW ProSeries WiFi/Z-Wave Communications Module, T6 Pro Z-Wave Thermostat, Z-Wave Plus Lighting Control Devices, Z-Wave compatible lights, dimmers (such as In-Wall Smart Dimmer), thermostats (such as Honeywell TH8320ZW1034, Honeywell - Opower, Vision PRO Z-Wave Thermostat), Honeywell Vista Automation Module, TUXEDOW Touch Security and Smart Controller, In-Wall Smart Switch, In-Wall Tamper Resistant Outlet, Plug-in Dimmer (Dual Plug Simultaneous Control), Plug-in Switch (Dual Plug Simultaneous Control), Plug-in Outdoor Smart Switch, In-Wall Smart Switch, L5100-ZWAVE-LYNX Touch Z-Wave Control Module, ZCOMBO-G Sensors, LTEM-P, Resideo VX3 HD Outdoor Camera, CAMW-WDB security camera, First Alert Indoor Video Camera CAMW-WI, Fuji X2S Thermostat, RTF0B41AL59UB Wireless Module, FocusPRO S200 Smart Thermostat, Resideo Total Connect 2.0 app, Resideo First Alert app Control

panels/touchscreens, First Alert App, Resideo App, Total Connect Comfort App, Total Connect 2.0 App, Resideo Pro App, AlarmNet 360 App, Onelink Connect app, Onelink Home by First Alert app,  Smart Thermostats, Timer Switches, Kits, Wifi Water Leak & Freeze Detectors, Wifi Water Leak Shutoff Valves, Wifi Water Sensor & Switches, Video Doorbells, Smart Cameras, Outdoor Temperature and Humidity Sensor, Wireless Indoor Air Sensor,  Doorbells, Indoor Cameras, Outdoor Cameras, Touch Screens, Wireless Panic Transmitter, Wireless Keypads, Wireless Tilt Sensor Transmitter, Outdoor Temperature and Humidity Sensor, Outdoor Wireless Contact Transmitter, Wireless Transmitters, Wireless Detectors, Wireless Keys, Wireless Sirens, Smoke Alarms, Carbon Monoxide Alarms, Smoke & Carbon Monoxide Alarms, Smoke & CO Alarm, Smoke & Carbon Monoxide Detectors, Temperature Detectors, Motion Detectors, Sensors (such as Door/Window sensor, Heat Sensor, Shock Sensor), Glassbreak Detectors, MotionViewer, Flood Detector, Ductless Controller, Lyric Controller for Smart Home, BRK Smoke Alarms, BRK Smoke & Carbon Monoxide Alarms, CO Alarms, Onelink Wi-Fi Smoke + Carbon Monoxide Alarm (Model: AC10-500), Onelink Wi-Fi Smoke + Carbon Monoxide Alarm (Model: DC10-500), Onelink Smart Smoke & Carbon Monoxide Alarm, Onelink Safe & Sound, Onelink Environment Monitor (Model: GLOCO-500), Onelink Secure Connect Dual-Band Mesh Wi-Fi Router System, Onelink Secure Connect Tri-Band Mesh Wi-Fi Router System, C1 WiFi Security Camera, C2 WiFi Security Camera, D6 Pro WiFi Ductless Controller, Fresh Air Ventilation Kit, VWS01Y-1/2 - L5 WiFi Actuator, L1 Leak Detector and 1/2 in NPT Ball Valve, Wifi 7-Day Programmable Thermostat, T6 Pro Smart Thermostat Multi-Stage 3 Heat/2 Cool, Wifi Smart Color Thermostat, Proa7/Proa7plus 7'' All-In-One Panel, Visionpro 8000 Wifi Programmable Thermostat, D6 Pro Wifi Ductless Controller, T10+ Pro Smart Thermostat With Redlink 3.0 Includes Room Sensor, 9000 Smart Color Touchscreen Thermostat, T5 Smart Thermostat, T9

Smart Thermostat With Sensor, Wifi Programmable Smart Thermostat, Whole Home Comfort Kit, Resideo L1 Wifi Water Leak Detector, X2s Smart Thermostat, Vws01y-1/2 - L5 Wifi Actuator, L1 Leak Detector And 1/2 In Npt Ball Valve, Lyric Gateway, C1 Wi-Fi Security Camera, C2 Wi-Fi Security Camera, Onelink Secure Connect, Buoy Whole Home Water Controller, Proseries And Vistah Hybrid Wi-Fi/Z-Wave Communication Module (Prowifiz), T10+ Pro Smart Thermostat Kit, Smart Home Security Kits Chs5700wf6003/U, L5 Wifi Replacement Actuator, Vws02y-1/2 - L5 Wifi Actuator With 1/2 In Npt Ball Valve, Dbcam-Trim2 Silver Trim 2 Wifi Video Doorbell, Chc8480w1013/U, T6 Pro Smart Thermostat Multi-Stage 2 Heat/2 Cool, Onelink Smart Smoke & Carbon Monoxide Alarm, TH8732WF Wi-Fi Round  Thermostat, First Alert Vista H3 Control Panel, DBCAM-DAK Digital Doorbell Adapter, Fresh Air Ventilation Kit, The Round Smart Thermostat, Wifi Focuspro 6000 Programmable Thermostat, Vws01y-3/4 - L5 Wifi Actuator, L1 Leak Detector And 3/4 In Npt Ball Valve, Vws01y-1 - L5 Wifi Actuator With L1 Leak Detector And 1 In Npt Ball Valve, T9 Smart Thermostat, T9 Smart Thermostat And Sensor With C-Wire Adaptor, T9 Smart Thermostat With C-Wire Adaptor (collectively, the "Accused Products").

28.     Defendants each instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products.

29.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of one or more of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,974,266

30.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

31.     The USPTO duly issued U.S. Patent No. 7,974,266 (hereinafter, the "'266 patent") on July 5, 2011, after full and fair examination of Application No. 11/778,822, which was filed on

July 17, 2007.  *See* '266 patent at p. 1.  A Certificate of Correction was issued on November 22, 2011.  *Id.* at p. 11.

32.    IoT Innovations owns all substantial rights, interest, and title in and to the '266 patent, including the sole and exclusive right to prosecute this action and enforce the '266 patent against infringers and to collect damages for all relevant times.

33.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '266 patent.

34.    The claims of the '266 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of data transmission in a packet switch network.

35.    The written description of the '266 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.    Defendants have directly infringed the claims of the '266 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

37.    Defendants have directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '266 patent.

38.    As just one example, Defendants, using the Accused Products and associated hardware

and software and functionalities, perform a method of classifying data comprising: receiving Internet Protocol (IP) data at a first node: classifying the IP data received at the first node based on a last destination address entry of a plurality of destination address entries in a header of the IP data; and forwarding the IP data from the first node to a second node, wherein the IP data is classified at the second node based on the last destination address entry of the plurality of destination address entries in the header of the IP data. *See, e.g.*, **Exhibit A**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266.

39.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,246,173

40.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

41.     The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

42.     IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce the '173 patent against infringers and to collect damages for all relevant times.

43.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

44.     The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

45.     The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

46.     Defendants have directly infringed the claims of the '173 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

47.     For example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '173 patent.

48.     As just one example of infringement, the Accused Products perform a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header. *See, e.g.*, **Exhibit B**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173.

49.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it

for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,474,667

50.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

51.    The USPTO duly issued U.S. Patent No. 7,474,667 (hereinafter, the "'667 patent") on January 6, 2009 after full and fair examination of Application No. 11/879,576 which was filed on July 18, 2007.  *See* '667 patent at p. 1.  A Certificate of Correction was issued on January 1, 2013. *Id.* at p. 18.

52.    IoT Innovations owns all substantial rights, interest, and title in and to the '667 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

53.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '667 patent.

54.    The claims of the '667 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices.

55.    The written description of the '667 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.    Defendants have directly infringed the claims of the '667 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

57.    For example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '667 patent.

58.    As just one example, Defendants, using the Accused Products and associated hardware and software and functionalities, perform a method for receiving a selection of a communications device from a plurality of communications devices associated with a common user, receiving the data associated with the selected communications device, accessing a database of rule-based profiles comprising configuration and presentation parameters for the plurality of communications devices, querying the database of rule-based profiles for the selected communications device, retrieving a profile associated with the selected communications device, integrating the data into the profile; and communicating the integrated data and the profile to the selected communications device. *See, e.g.*, **Exhibit C**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,474,667.

59.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

60.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as

though fully set forth in their entirety.

61.     The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007. *See* '580 patent at p. 1.

62.     IoT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

63.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

64.     The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of communications devices by sharing of personalized information by providing communications infrastructures to support and capitalize on the different communications devices of the user to provide up-to-date personalized information through a digital gateway.

65.     The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.     Defendants have directly infringed the claims of the '580 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

67.     For example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

68.     As just one example, Defendants, using the Accused Products  and its associated hardware and software and functionalities, perform a method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices. *See, e.g.*, **Exhibit D**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,567,580.

69.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

70.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

71.     The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007.  *See* '428 patent at p. 1.

72.     IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

73.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

74.     The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities that improve electronic communications by providing a for the detection and discarding of corrupted data in a data packet using additional checksums.

75.     The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

76.     Defendants have directly infringed the claims of the '428 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

77.     For example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent.

78.     As just one example, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation. *See, e.g.*, **Exhibit E**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428.

79.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,209,876

80.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

81.     The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007 after full and fair examination of Application No. 10/293,743 which was filed on November 13, 2002.  *See* '876 patent at p.1.

82.     IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and

to collect damages for all relevant times.

83.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

84.    The written description of the '876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

85.    Defendants have directly infringed and continue to directly infringe the claims of the '876 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

86.    For example, Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 13 of the '876 patent.

87.    As just one example of infringement, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for producing answers to a question or query, executable in a computer system, comprising the steps of: (a) receiving a search question or query comprising data indicative of a subject to be searched; (b) initiating a key words and/or phrases search of an information repository for data containing terms present in said search question or query, and receiving a first data set comprising data from said information repository containing terms present in said search question or query; (c) retrieving answer phrases from said first data set having a syntactic form matching an expected answer to said search question or query; and (d) providing output in the form of one or more of said answer

phrases.  *See, e.g.*, **Exhibit F**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,209,876.

88.    IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,408,872

89.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

90.    The USPTO duly issued U.S. Patent No. 7,408,872 (hereinafter, the "'872 patent") on August 5, 2008, after full and fair examination of Application No. 10/483,367, which was filed on July 9, 2001.  *See* '872 patent at p.1.

91.    IoT Innovations owns all substantial rights, interest, and title in and to the '872 patent, including the sole and exclusive right to prosecute this action and enforce the '872 patent against infringers and to collect damages for all relevant times.

92.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '872 patent.

93.    The written description of the '872 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     Defendants have directly infringed and continue to directly infringe the claims of the '872 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of one or more of the Accused Products.

95.     For example, Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '872 patent.

96.     As just one example of infringement, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for modulating signals, wherein signals are to be transmitted by a device in packets via an air interface, the method comprising: receiving a first plurality of bits and a second plurality of bits, creating a pair of bits by adding a set bit to a first bit of said first plurality of bits, wherein one of said set bit and said first bit of said first plurality of bits has a fixed value, and mapping one of a first set of values to said pair of bits according to a selected modulation scheme and mapping a second set of values to said second plurality of bits according to said selected modulation scheme. *See, e.g.*, **Exhibit G**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872.

97.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,394,798

98.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

99.     The USPTO duly issued U.S. Patent No. 7,394,798 (hereinafter, the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694 which was filed on

October 13, 2004. *See* '798 patent p.1.

100.    IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

101.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

102.    The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

103.    Defendants have directly infringed and continue to directly infringe the claims of the '798 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of one or more of the Accused Products.

104.    For example, Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 16 of the '798 patent.

105.    As just one example of infringement, Defendants, using the Accused Products and their associated hardware and software and functionalities, perform a method for controlling network system comprising: temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes

sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group.  *See, e.g.*, **Exhibit H**, Evidence of Use Regarding Infringement of U.S. Patent No. 7,394,798.

106.    Defendants had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

107.    Since gaining knowledge of the '798 patent, Defendants have also indirectly infringed one or more claims of the '798 patent by inducing others to directly infringe said claims.  *See, e.g.*, User Guide for T6 Pro Z-Wave Programmable Thermostat, https://digitalassets.resideo.com/damroot/Original/10017/33-00588EFS.pdf; *see also* User Guide for the VisionPRO 8000 Smart Thermostat, https://digitalassets.resideo.com/damroot/Original/10018/33-00066EFS.pdf.

108.    Defendants have induced end-users, including, but not limited to, Defendants' employees, partners, contractors, customers, and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '798 patent by providing or requiring use of the Accused Products.

109.    Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent.

110.    Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing

ongoing instructional and technical support to customer on its website on how to use the Accused Products in an infringing manner.

111.     Defendants are performing these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement.

112.     Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '798 patent.

113.     Defendants' inducement is ongoing.  *See, e.g.*, User Guide for T6 Pro Z-Wave Programmable Thermostat, https://digitalassets.resideo.com/damroot/Original/10017/33-00588EFS.pdf; *see also* User Guide for the VisionPRO 8000 Smart Thermostat, https://digitalassets.resideo.com/damroot/Original/10018/33-00066EFS.pdf.

114.     Since gaining knowledge of the '798 patent, Defendants have also indirectly infringed by contributing to the infringement of the '798 patent.

115.     Defendants have contributed to the direct infringement of the '798 patent by its personnel, contractors, and customers.

116.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent.

117.     The special features constitute a material part of the invention of one or more of the claims of the '798 patent and are not staple articles of commerce suitable for substantial non-infringing use.

118.     Defendants' contributory infringement is ongoing.  *See, e.g.*, User Guide for T6 Pro Z-Wave Programmable Thermostat, https://digitalassets.resideo.com/damroot/Original/10017/33-

00588EFS.pdf; *see also* User Guide for the VisionPRO 8000 Smart Thermostat, https://digitalassets.resideo.com/damroot/Original/10018/33-00066EFS.pdf.

119.     Since gaining knowledge of the '798 patent, Defendants' direct infringement of one or more claims of the '798 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

120.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

121.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

122.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendants' infringement of the '798 patent.  Defendants' actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

123.     IoT Innovations has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

124.     IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

125.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

    a.   Judgment that one or more claims of the Asserted Patent has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

    b.   A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '798 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patent by such entities;

    c.   Judgment that Defendants account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of their infringing activities and other conduct complained of herein;

    d.   Judgment that Defendants' infringements be found willful as to the '798 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

    e.   Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

    f.   That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

    g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>February 25, 2025</u>                    Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff IoT INNOVATIONS LLC*

\* Admitted to the Eastern District of Texas

**List of Exhibits**

    A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266

    B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173

    C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,474,667

    D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,567,580

    E.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428

    F.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,209,876

    G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872

    H.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,394,798

**Attachments**

- Civil Cover Sheet
- Proposed Summons (2)